IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:25-CV-197-KS

| | | |
|---|---|---|
| JOHNNY WEST,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO, Commissioner of Social Security,[1]<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | **ORDER** |

This matter is before the court for judicial review pursuant to 42 U.S.C. § 405(g) of a final administrative decision of the Social Security Administration. Johnny West ("Plaintiff") filed this action seeking judicial review of the denial of his application for a period of disability and disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). The parties have fully briefed the matter pursuant to the Supplemental Rules for Social Security Actions, and the matter is ripe for decision. Having carefully reviewed the administrative record and the parties' briefs, the undersigned remands the case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings.

[1] Frank Bisignano is now the Commissioner of Social Security and therefore is substituted as the defendant to this action. *See* Fed. R. Civ. P. 25(d).

## STATEMENT OF THE CASE

Plaintiff applied for DIB and SSI on September 30, 2021, with an alleged onset date of October 8, 2019. (R. 17, 256–62.) The application was denied initially and upon reconsideration, and a request for hearing was filed. (R. 17, 99, 128–29, 153, 183–84.) A telephonic hearing was held on November 9, 2023, before Administrative Law Judge ("ALJ") Vanessa Lucas, who issued an unfavorable ruling on March 12, 2024. (R. 17–77.) On February 12, 2025, the Appeals Council denied Plaintiff's request for review. (R. 1–6.) At that time, the ALJ's decision became the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481. Plaintiff initiated this action on April 12, 2025, seeking judicial review of the final administrative decision.

## DISCUSSION

### I. Standard of Review

The scope of judicial review of a final agency decision denying disability benefits is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; [i]t consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971), and *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)) (citations

omitted) (alteration in original). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig*, 76 F.3d at 589) (first and second alterations in original). Rather, in conducting the "substantial evidence" inquiry, the court determines whether the Commissioner has considered all relevant evidence and sufficiently explained the weight accorded to the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

**II. Disability Determination**

In making a disability determination, the Commissioner utilizes a five-step evaluation process. The Commissioner asks, sequentially, whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, App. 1; (4) can perform the requirements of past work; and, if not, (5) based on the claimant's age, work experience, and residual functional capacity can adjust to other work that exists in significant numbers in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Albright v. Comm'r of SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th. Cir. 1995). At the fifth step, the burden shifts to the Commissioner to show that other work exists in the national economy that the claimant can perform. *Id.* In

making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981). "If the Commissioner meets [this] burden, the ALJ finds the claimant not disabled and denies the application for benefits." *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

## III. ALJ's Findings

Applying the five-step, sequential evaluation process, the ALJ found Plaintiff "not disabled" as defined in the Social Security Act ("the Act"). As a preliminary matter related to the DIB claim, the ALJ found Plaintiff meets the insured status requirements of the Act through December 31, 2024. (R. 19.) At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since October 8, 2019, the alleged onset date. (*Id.*) Next, the ALJ determined Plaintiff has severe impairments of degenerative disc disease and scoliosis; status-post thoracolumbar fusions and revision; post-laminectomy syndrome; hypertension; diabetes mellitus; obesity; post-traumatic stress disorder ("PTSD"); major depressive disorder; and generalized anxiety disorder. (*Id.*)

At step three, the ALJ concluded Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App. 1. (R. 20.) The ALJ expressly considered Listings 1.15, 1.16, 12.04, 12.06, 12.15, SSR 14–2p and listing

sections 1.00, 2.00, 4.00, 5.00, 6.00, 8.00, 11.00, and 12.00 in connection with Plaintiff's diabetes, and SSR 19–2p in connection with Plaintiff's obesity. (R. 20–23.)

Before proceeding to step four, the ALJ assessed Plaintiff's residual functional capacity ("RFC") and found that Plaintiff has

> the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b), except he would need to change positions up to every 30 minutes. [Plaintiff] can occasionally stoop and crouch; never climb, kneel, crawl, or balance, with balance as defined by the Selected Characteristics of Occupations (SCO). He must avoid all exposure to unprotected heights and dangerous machinery, as well as vibration. [Plaintiff] can be exposed to no more than moderate noise, as defined by the SCO. He can frequently reach. [Plaintiff] can understand and remember instructions consistent with simple work. He can maintain concentration, persistence, and pace for and adapt to and manage simple work. Simple work is defined as work that requires little or no judgment to perform simple duties that an individual can learn on the job in a short period, meaning 30 days or less. [Plaintiff] can have no interaction with the general public, not even superficial interaction, meaning that he needs to be working in an area separate from the general public. He can have occasional interaction with coworkers and supervisors.

(R. 23–24.) In making the assessment, the ALJ stated she considered Plaintiff's symptoms and the evidence (both "objective medical" and "other") based on the requirements of 20 C.F.R. §§ 404.1529, 416.929, and SSR 16–3p, 2017 WL 5180304 (Oct. 25, 2017), and found Plaintiff's statements about his symptoms "not entirely consistent with the medical evidence and other evidence." (R. 24–25.) At step four, the ALJ concluded Plaintiff is unable to perform any past relevant work. (R. 31.) At step five, the ALJ determined, based upon Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy

that Plaintiff can perform, namely: marker (DOT #209.587-034), routing clerk (DOT #222.687-022), and garment sorter (DOT #222.687-014). (R. 31–32.) The ALJ concluded that Plaintiff has not been disabled under the Act from October 8, 2019, through March 12, 2024, the date of the decision. (R. 32.)

## IV. Plaintiff's Arguments

Plaintiff raises two arguments: (A) the ALJ constructively reopened a previously adjudicated benefits application from Plaintiff by discussing and considering evidence from that previously adjudicated claim (Pl.'s Br. [DE #18] at 11–12; Pl.'s Reply [DE #21] at 5–7); and (B) the ALJ improperly evaluated Plaintiff's statements about his symptoms and failed to explain how she concluded Plaintiff can sustain the exertional requirements of light work despite Plaintiff's pain (Pl.'s Br. at 12–18; Pl.'s Reply at 1–5). The court determines that remand to the Commissioner is necessary due to deficiencies in the ALJ's evaluation of Plaintiff's symptom severity statements and RFC explanation. In light of the decision to remand, the court declines to address Plaintiff's argument regarding the constructive reopening of a prior benefits application.

To enable meaningful judicial review, an ALJ must explain how the evidence led to her conclusions. *Arakas v. Comm'r of SSA*, 983 F.3d 83, 95 (4th Cir. 2020) ("To pass muster, ALJs must 'build an accurate and logical bridge' from the evidence to their conclusions." (quoting *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016))); *see also Mascio*, 780 F.3d at 637 (remand is necessary when a reviewing court is "left to

guess about how the ALJ arrived at his conclusions"); SSR 96–8p, 1996 WL 374184, at *7 (July 2, 1996) (ALJ must "explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved"). Merely summarizing or listing evidence without providing the relevant logical explanation frustrates meaningful review. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). When an ALJ determines that a claimant's statements about his symptoms are inconsistent with the evidence in the record, the ALJ must explain how the claimant's statements are inconsistent with the record evidence and "how [the ALJ's] evaluation of the individual's symptoms led to [her] conclusions." SSR 16–3p, 2017 WL 5180304, at *8.

ALJ Lucas assessed an RFC that was inconsistent in several respects with Plaintiff's statements about his symptoms. (*Compare* R. 23–24 (RFC assessment) *with* R. 24 (ALJ summary of Plaintiff's testimony).) The ALJ provided the following explanation for her decision not to fully credit Plaintiff's statements about his symptoms:

> After a careful review of the medical evidence and [Plaintiff]'s testimony, the undersigned finds [Plaintiff]'s allegations only partially consistent with the medical evidence. As discussed above, [Plaintiff] required surgery shortly after the alleged onset date, and signs, symptoms. [*sic*] Thereafter, routine and conservative treatment maintained signs, symptoms, and functioning at a level consistent with the significantly reduced range of light exertion set forth in the [RFC]. Toward the end of 2022, [Plaintiff] had an exacerbation of symptoms caused by a displacement of the left rod in the prior fusion. He required a revision surgery in December 2022, and since that time, signs, symptoms, and functioning have generally returned to baseline experienced after the initial surgery. Therefore, there has been no

> continuous 12-month period since the alleged onset date during which the significantly reduced range of light exertion set forth in the [RFC] was precluded. As discussed in detail above, mental signs, symptoms, and functioning have improved and stabilized with medication management and therapy, as evidenced by [Plaintiff]'s statements and symptoms and objective signs. The mental limitations in the [RFC] accommodate his limitations.

(R. 30–31.)

The ALJ's evaluation of Plaintiff's symptom severity statements is deficient for several reasons. First, the statement that Plaintiff's "signs, symptoms, and functioning have generally returned to baseline experienced after the initial surgery" does not clarify what the ALJ's findings about those "signs, symptoms, and functioning" are and how the ALJ arrived at those findings. *See, e.g., Arakas*, 983 F.3d at 95; SSR 96–8p, 1996 WL 374184, at *7; SSR 16–3p, 2017 WL 5180304, at *8. This problem is particularly pronounced here because, as the ALJ noted, Plaintiff's symptoms after his first back surgery deteriorated to the point where Plaintiff required a second surgery. (R. 30.) Failing to explain Plaintiff's "baseline" after the first surgery would be less problematic if the ALJ had explained her findings about Plaintiff's symptoms after the second surgery. However, aside from the circular statements about the RFC not being precluded and Plaintiff's "signs, symptoms, and functioning" having "improved and stabilized with medication management and therapy, as evidenced by [Plaintiff]'s subjective statements and symptoms and objective signs," there is no explanation from the ALJ about why she found Plaintiff's

symptom severity statements only partially consistent with the medical evidence.[2] (R. 30–31.) This deficiency is particularly problematic because the ALJ credits and relies on aspects of Plaintiff's testimony. (R. 30 (relying on Plaintiff's testimony to reject medical opinions from state agency consultants about Plaintiff's reaching ability), 31 (relying on Plaintiff's "subjective statements" to support proposition that Plaintiff's "signs, symptoms, and functioning have improved").) It is unclear why the ALJ credited certain aspects of Plaintiff's statements about his symptoms and not others. *See Mascio*, 780 F.3d at 640 ("Nowhere, however, does the ALJ explain how he decided which of Mascio's statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering Mascio's [RFC]."). The ALJ's explanation leaves this court to guess as to how the ALJ evaluated Plaintiff's symptom severity statements and reached the conclusions in the RFC. *See Mascio*, 780 F.3d at 637. Accordingly, remand is necessary.

The court expresses no view on Plaintiff's argument that the ALJ "constructively reopened" a prior application for benefits. Plaintiff's opening brief identifies no authority discussing the remedy for this type of alleged error. (Pl.'s Br.

---

[2] To be clear, the ALJ summarized the record evidence in detail. (R. 24–28.) But summary of evidence is not "a detailed analysis of fact and law." *Hultz v. Bisignano*, 162 F.4th 111, 123 (4th Cir. 2025); *see also Thomas*, 916 F.3d at 311. Moreover, at least some of the summarized evidence tends to support Plaintiff's symptom severity statements and appears in tension with the RFC assessed by the ALJ. (*See* R. 27 (summarizing October 2023 orthopedic treatment note indicating more significant pain and decreased range of motion).)

at 11–12.) In his reply, Plaintiff argues it is important for this court to address this issue because it may impact his disability onset date and, in turn, Medicare eligibility and back pay calculations if Plaintiff is ultimately found disabled under the Act. (Pl.'s Reply at 7.) Because the court determines that remand to the Commissioner, rather than reversal and an award of benefits, is the appropriate remedy, it would be premature for this court to adjudicate this issue.

## CONCLUSION

For the reasons stated above, the Commissioner's decision is REVERSED and the case is REMANDED to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this order.

This 15th day of September 2026.

KIMBERLY A. SWANK
United States Magistrate Judge